MID JONES v. THE STATE.

No. 429.   Decided February 23, 1910.

**1.—Carrying Pistol—Credible Person—Affidavit.**

The mere fact that a witness for the State who made the complaint against the defendant was impeached as to his veracity upon the trial of the case, did not render him an incredible person, so as to authorize the court to quash the complaint. Following Conant v. State, 51 Texas Crim. Rep., 610, and other cases.

**2.—Same—Evidence—Testimony drawn out by Defendant.**

Where, upon trial for unlawfully carrying a pistol, defendant's counsel asked the State's witness why he waited so long before he made the complaint, and the witness answered that he did not intend to make the complaint, but the defendant kept going around over the country threatening him, there was no error, as defendant drew out this matter, nor was there any error in permitting State's counsel to comment on this testimony.

**3.—Same—Argument of Counsel—Requested Charge Necessary.**

Where, upon trial for unlawfully carrying a pistol, the argument of the State's counsel was not of such character as required a reversal of the judgment, and no special charge was requested to disregard the argument, there was no error.

**4.—Same—Sufficiency of the Evidence.**

Where, upon trial for unlawfully carrying a pistol, the evidence sustained the conviction, the same will not be disturbed.

Appeal from the County Court of Brazos. Tried below before the Hon. A. G. Board.

Appeal from a violation of unlawfully carrying a pistol; penalty, a fine of $100 and thirty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley*, Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for carrying a pistol on and about his person.

The evidence shows by Wilson and his wife that appellant went to the residence of Wilson and there displayed a pistol. This was flatly contradicted by appellant in his testimony. The general reputation of Wilson and his wife was impeached for truth and veracity by three witnesses, all of whom are white men. The evidence rather indicates that appellant and the two witnesses, Wilson and his wife, were negroes. Be this as it may, the facts are as above stated in regard to carrying the pistol.

1. It is contended under this state of case that Wilson, who made the affidavit upon which the information is based, was not a credible person, and that inasmuch as the statute requires such affidavit to be made by a credible person, there has not been a sufficient compliance with the law in regard to this matter. To this contention we can not agree. Under the decisions bearing upon this question, this court has held that a credible person is one who is competent to give evidence and is worthy of belief. There is no question of the fact that Wilson was a competent person unless he was rendered incompetent by the mere fact that three witnesses testified that his reputation for truth and veracity was bad. We do not believe the statute with reference to requiring the affidavit to be made by a credible person contemplates that a person whose reputation for truth and veracity may be attacked is a person who is not credible. There are certain witnesses who can not make such affidavit under this statute. For instance, a man against his wife, or the wife against the husband for an offense other than that committed against the person. Other illustrations could be stated. Decisions are also found which hold that in cases of perjury where the witness is in some way particeps criminis and the reputation for truth

and veracity is also attacked. See Conant v. State, 51 Texas Crim. Rep., 610; Smith v. State, 22 Texas Crim. App., 196. The mere fact that a witness for the State who made the complaint against appellant was impeached as to veracity does not render him an incredible person under the statute in question. It is a question of fact for the jury to say whether or not, under such circumstances, they would believe his testimony when used as a witness. The court signs the bill of exceptions in regard to this matter as follows: "Defendant's counsel presented the motion to quash to me and I asked him the nature of the evidence he proposed to offer. He said he proposed to show the witness is unworthy of belief. I stated to him that this only went to the weight of his evidence and was not ground to quash on, but if he wanted to show that he was an ex-convict or a convict or evidence of this character I would hear it." As this matter is presented, we are of opinion there was no error.

2. A bill of exceptions was reserved to the ruling of the court permitting the witness Wilson to testify that after the time the defendant was charged in the complaint with having carried a pistol, and prior to the time of the filing of the complaint and information, that Mid Jones, the defendant, kept going around the country threatening him. Several grounds of objection are urged to this. This bill was signed with this explanation: "Defendant's counsel asked the witness why he waited so long before he made the complaint. The witness answered that he did not intend to make the complaint, but the defendant kept going around over the country threatening him," etc. As explained by the court, we think this testimony was admissible. Appellant drew out this matter.

3. The county attorney, in his closing argument before the jury, commented on the testimony of Dock Wilson, and said that Dock Wilson had testified that the defendant, prior to the filing of this complaint and subsequent to the date on which the offense is alleged to have been committed, had repeatedly threatened him in the community, and that Dock Wilson ought to have had him arrested and put in jail because the defendant had gone around over the community and threatened him. This argument was excepted to on the ground that the testimony alluded to by the county attorney was inadmissible, and the argument of the county attorney was calculated to prejudice the minds of the jury against him. This testimony was admitted, and being before the jury was proper subject of comment.

4. Another bill of exceptions recites the county attorney in his closing argument used the following language: "You are not going out and turn Mid Jones loose because Jim Dunn wants him turned loose. You are not going to turn him loose because McMichael wants him turned loose. You are not going to turn him loose because Luther Holland wants him turned loose. In nine-tenths of the cases that are defendant in this county this is the defense; they only ask the juries to turn them loose because some white man wants them turned

loose, and as long as they parade white men before the juries of the counties for that purpose I am going to tell the juries about it." Three witnesses testified for the State impeaching the veracity of Wilson and his wife; one of them testified that appellant's reputation was very good; that he was one of the best negroes on the creek. Appellant testified in his own behalf that he did not carry the pistol. We are of opinion that under this state of case the argument of the county attorney was not of such character as requires a reversal of the judgment. There was no special charge requested to disregard this argument.

5. We are of opinion that the evidence is sufficient to justify the jury in arriving at their verdict. Wilson and his wife swear positively that appellant went to their house, and in their presence exhibited the pistol in a threatening manner. Appellant denied this testifying in his own behalf. There was an issue as to the veracity between the witnesses, and it is the province of the jury to reconcile these matters, and it is not the province of this court to say that the jury were unwarranted in believing the State's testimony under such circumstances.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*